Carla M. Wirtschafter (SBN 292142)
Email:    cwirtschafter@reedsmith.com
REED SMITH LLP
1901 Avenue of the Stars, Suite 700
Los Angeles, CA  90067-6078
Telephone 310-734-55200
Fax 310-734-5299

James C. McCarroll (*Pro hac vice forthcoming*)
599 Lexington Avenue, 29th Floor
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
jmccarroll@reedsmith.com

Rizwan A. Qureshi (*Pro hac vice forthcoming*)
1301 K Street, N.W.
Suite 1000, East Tower
Washington, DC 20005-3317
Telephone: (202) 414-9200
Facsimile: (202) 414-9299
Email: rqureshi@reedsmith.com

*Attorneys for Petitioner
  Daniel Snyder*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782 | Misc. Action No. _____<br><br>***Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782** |

- i -

Petitioner Daniel Snyder ("Mr. Snyder" or "Petitioner"), by and through his undersigned counsel and based upon the Declaration of Rizwan A. Qureshi, Esq., dated August 7, 2020 ("Qureshi Decl.") filed concurrently herewith, respectfully petitions this Court *ex parte* for an Order pursuant to 28 U.S.C. § 1782, compelling New Content Media Inc. d/b/a MEA WorldWide ("New Content" or "Respondent"), a corporation residing in this District, to produce discovery for use in a proceeding currently pending in India

This Petition is supported by the Declaration of Rizwan A. Qureshi and the Exhibits thereto and the memorandum of points and authorities filed concurrently herewith.

Dated: August 7, 2020　　　　　　　　REED SMITH LLP

　　　　　　　　　　　　　　　　　　By: By: */s/ Carla Wirtschafter*
　　　　　　　　　　　　　　　　　　　　Carla Wirtschafter
　　　　　　　　　　　　　　　　　　　　James C. McCarroll
　　　　　　　　　　　　　　　　　　　　Rizwan A. Qureshi
　　　　　　　　　　　　　　　　　　　　*Attorneys for Petitioner*
　　　　　　　　　　　　　　　　　　　　*Daniel Snyder*

**Table of Contents**

Page

I. INTRODUCTION ........................................................................................................1
III. JURISDICTION AND VENUE...................................................................................3
IV. THE INDIAN ACTION ...............................................................................................3
   A. Parties to the Indian Action ................................................................................3
   B. The MEAWW Website .......................................................................................3
   C. The Defamatory Articles .....................................................................................4
V. DISCOVERY REQUESTED .......................................................................................7
VI. PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY ....8
   A. Section 1782 Governs this Court's Authority to Order Discovery ......................8
   B. Petitioner Satisfies the Requirements under Section 1782 ..................................9
   C. The Court Should Exercise its Discretion to Grant Petitioner the Discovery He Seeks........................................................................................................................10
VII. CONCLUSION ..........................................................................................................12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
  292 F.3d 664 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) .................................................................8

*AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*,
  762 F. App'x 447 (9th Cir. 2019) ..............................................................................................10

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
  793 F.3d 1108 (9th Cir. 2015) ...................................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..................................................................................................8, 9, 10, 11

*London v. Does 1-4*,
  279 F. App'x 513 (9th Cir. 2008) .................................................................................................9

**Statutes**

28 U.S.C. §§ 1331 and 1782 ...........................................................................................................3

28 U.S.C. §§ 1391(c) and 1782 ......................................................................................................3

28 U.S.C. § 1782 .............................................................................................................. *passim*

28 U.S.C. § 1782(a) ....................................................................................................................8, 9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Petitioner seeks discovery from Respondent to aid in the assistance of litigation currently pending in The Court of the Hon'ble High Court of Delhi (the "Indian Court"), bearing the caption *Daniel Snyder Through his SPA Holder vs. Eleven Internet Services LLP & Ors.* (the "Indian Action") (filed on August 7, 2020, local time which is twelve and a half hours ahead of Pacific Daylight Time).  A true and correct copy of the Indian Action is attached to the Qureshi Decl. as **Exhibit F**.

The Indian Action arises out of the publication of a series of defamatory "news" articles concerning Petitioner on the MEA WorldWide website, located at the URL http://www.meaww.com ("MEAWW").  The articles contain flagrantly false representations concerning Petitioner, including but not limited to accusing Petitioner of sexual misconduct, such as involvement in sex trafficking, and affiliating with sexual predator Jeffrey Epstein.  Petitioner asserts causes of action for defamation *per se* against the authors of those articles, as well as Respondent's India-based parent company, Eleven Internet Services LLP ("Eleven"), which upon information and belief directed the publication of those false and defamatory articles on behalf of hidden third-party clients.

Upon information and belief, Respondent – a Delaware corporation that maintains its principal place of business within this District – is a subsidiary of Eleven and owns, operates and/or controls the MEAWW website, as well as any content posted thereon.  Furthermore, upon information and belief, Respondent has possession, custody and/or control of the servers upon which MEAWW's data is hosted, all of which are located in the United States.

Accordingly, Respondent possesses highly relevant documents and information relating to, *inter alia*, the hiring of Respondent by third-parties seeking to discredit and damage the Petitioner and his business enterprises, the creation, editing and approval of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the Defamatory Articles (as defined herein), the parties behind payments made in order to procure the posting of the Defamatory Articles, sources of information upon which the Defamatory Articles were based, the revenues that were generated as a result of the "click-bait" Defamatory Articles, and other statistics concerning the number of site views and social media interactions that resulted from posting the Defamatory Articles. The subpoenas for the production of documents and for deposition testimony that Petitioner seeks to serve on Respondent have been appended to the Qureshi Decl. as **Exhibits A and B**.

The documents and information in Respondent's possession, custody and/or control indisputably will aid the Indian Court in resolving Petitioner's defamation claims.

As discussed herein, Petitioner meets all the statutory criteria for the issuance of an order allowing the requested discovery. *See* 28 U.S.C. § 1782. Additionally, all the discretionary factors that this Court may consider favor granting this Petition. Petitioner thus respectfully requests that his Petition be granted. A proposed order has been appended to the Qureshi Decl. at **Exhibit C**.

## II.     PARTIES TO THIS PETITION

Petitioner Daniel Snyder is an individual who resides in Maryland. Mr. Snyder is the majority owner of the National Football League football team, the Washington Football Team.[1]

Respondent New Content is a company organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. Upon information and belief, New Content owns, operates and/or controls website MEAWW, along with the servers upon which MEAWW hosts its relevant data and information. Respondent further holds itself out as the developer and owner of the

---

[1] Until recently, the Washington Football Team was known as the Washington Redskins. "Washington Football Team" is intended as a temporary name until the Team replaces its previous name.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

MEAWW cell phone application. An individual named David Richard – who upon information and belief lives in Los Angeles – is both a registered agent for New Content, and worked as MEAWW's Head of Partners & Operations in North America.

### III.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this application under 28 U.S.C. §§ 1331 and 1782. This Court has personal jurisdiction over Respondent because it resides and does business in the State of California and in this Judicial District. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(c) and 1782 because Respondent resides in this District.

### IV.  THE INDIAN ACTION

#### A. Parties to the Indian Action

Petitioner has asserted a claim for defamation *per se* in the Indian Court against Indian company, Eleven, and its Indian subsidiary MEAWW, as well as Indian residents Anay Chowdhary ("Anay") and Nirnay Chowdhary ("Nirnay"), Prarthna Sakar ("Sakar") and Jyotsna Basotia ("Basotia") (collectively, the "Individual Defendants").

Eleven is a company based in India and incorporated under the laws of India. Upon information and belief, Eleven is the parent company of Respondent. Eleven maintains and exercises editorial control over the content posted on MEAWW.

Anay and Nirnay, residents of India, are the principals of Eleven, operate MEAWW, and have the final control over what is published on MEAWW. Sakar and Basotia – also both residents of India – are writers for MEAWW.

#### B. The MEAWW Website

MEAWW purports to be, and holds itself out as, a news website. MEAWW publishes "news" stories regarding a broad variety of matters, including pop culture, law and government, and media and entertainment. In reality, however, rather than being legitimate news sources and reporters, MEAWW intentionally sows misinformation at the behest of its undisclosed clients, including governments and intelligence services, and often is hired by clients that are cloaked behind several layers

of anonymous corporate entities. MEAWW thus acts as a hired agent of these unnamed entities to knowingly spread, among other things, false and defamatory statements concerning the clients' rivals.

Respondent, together with Eleven, owns, operates and controls MEAWW, including directing the content that is published on the site, as well as running social media accounts on Facebook, Twitter, and other platforms associated with MEAWW.

MEAWW has worldwide reach, as it publishes globally via the internet and receives internet traffic from the United States, India, and many other countries around the world.

### C. The Defamatory Articles

On or about July 16, 2020, MEAWW posted several untrue and wholly fabricated articles — written by Sakar and Basotia, and published at the direction of the Chowdhary brothers — regarding Petitioner, which falsely accuse him of a broad array of acts of criminal sexual misconduct including, among other things, involvement in sex trafficking, and affiliating with accused sexual predator Jeffrey Epstein (collectively, the "Defamatory Articles").

On July 16, 2020, the Indian Action defendants published an article on MEAWW, at the URL https://meaww.com/washington-redskins-owner-dan-snyder-to-step-down-owing-to-sex-trafficking-allegations-fan-reaction, bearing the headline "Washington Redskins owner Dan Snyder faces sex trafficking allegations; Internet says, 'He was on Epstein's list[.]'" (the "First Defamatory Article"). The First Defamatory Article falsely states that Mr. Snyder "has found himself in trouble yet again and this time it's allegedly for sex trafficking. The minority owners [of the Washington Football Team] are apparently looking at bringing him down citing inappropriate and unchaste behavior as one of the major reasons." The First Defamatory Article went on to publish utterly baseless speculation regarding whether a then-forthcoming *Washington Post* article about the Washington Football Team "would be about [Snyder's] alleged involvement in sex trafficking[,]" quoting several

- 4 -

anonymous posters from the internet forum Reddit.com, including baselessly quoting that "[Snyder] is getting [arrested] for sex trafficking. He was on [Jeffrey] Epstein's list too." *Id.* A true and correct copy of the First Defamatory Article is attached to the Qureshi Decl. as **Exhibit G**.

Also on or about July 16, 2020, the Indian Action defendants published an article at the URL https://meaww.com/washington-redskins-dan-snyder-jeffrey-epstein-sexual-harrasment-sex-trafficking-scandal-name-change, bearing the headline "#RedskinsScandal: Will Dan Snyder rename Washington Redskins the 'Epsteins'? Angry Internet screams 'throw him out'" (the "Second Defamatory Article"). The Second Defamatory Article refers to, and repeats, the false allegations of the First Defamatory Article: namely, the false claims that Snyder is linked to sexual predator Jeffrey Epstein and that Mr. Snyder is or was involved in sexual misconduct, including sexual harassment and/or sex trafficking. A true and correct copy of the Second Defamatory Article is attached to the Qureshi Decl. as **Exhibit H**.

These blatantly false and wholly fabricated articles purported to be factual news stories, but were and are utterly untrue and have no legitimate journalistic basis whatsoever. In fact, like much of MEAWW's content, the only purported "sources" for these articles were "the internet" and random social media posts from sites such as Reddit.com and Twitter that contained baseless speculation, hyperbolic rhetoric and malicious rumormongering without a shred of support whatsoever. Even a superficial review of the "sources" would demonstrate to the authors of the July 16, 2020 Articles that these largely anonymous posts are facially unreliable sources of information, and patently insufficient to form the factual basis for a "news" article.

The statements that MEAWW published about Mr. Snyder are categorically false. Moreover, Defendants published these slanderous, inflammatory statements about Mr. Snyder with complete disregard for their basis in fact at best, and deliberate intent to damage Mr. Snyder.

Although MEAWW reluctantly removed the July 16, 2020 Articles after Petitioner demanded their immediate removal, the damage to Mr. Snyder's reputation already had been done.

Mr. Snyder's children and other family members, and numerous of Mr. Snyder's friends, neighbors, and business associates, were exposed to the Defamatory Articles, either by directly viewing the Defamatory Articles online or by receiving word of the Defamatory Articles. Consequently, Mr. Snyder's reputation and good standing has been severely harmed, and will continue to be harmed, by the Defamatory Articles, and the members of Mr. Snyder's family have been severely harmed due to the publication of these lies on behalf of hidden third-party clients of Respondent.

The false allegations Defendants have seeded on the internet have taken root beyond MEAWW itself. For instance, on or about July 16, 2020 – not coincidentally, the very same day as the defamatory articles by MEAWW at issue herein – the following appeared on a Twitter account that has been confirmed as a fake account existing for no purpose other than to propagate false and misleading information:

> According to insiders and anonymous Washington Post employees, the [upcoming] article will allege that: Dan Snyder abuses drugs and alcohol[;] Snyder paid off refs. Some refs have made $2 million from him. And Snyder is not the only team owner paying off refs. Others do it too. Snyder and former Redskins coach Jay Gruden, brother of Jon Gruden, pimped out their cheerleaders to season ticket holders while holding their passports from them in a foreign country. Jay Gruden and then Redskins running back Kapri Bibbs were sleeping with the same woman. When Jay found out, he got petty and benched Bibbs. During that game when Bibbs was on the bench, Bibbs' replacement missed a block and that resulted in quarterback Alex Smith suffering a broken leg. Alex hasn't been able to play football ever since[.] Snyder and Gruden would hold sex parties with rampant drug usage and some sexual assaults[.] Snyder held nude photoshoots with the Redskins cheerleaders[.] Lawyers are already involved[.]

Whether this account is one of the "Bots" utilized to further propagate MEAWW's for-profit lies, or written by a human agent of MEAWW, will be further elucidated through discovery sought herein.

In all events, however, these false statements were further repeated on the very same day without attribution to MEAWW but without any further basis whatsoever in a Facebook account for a well-known fan group for Mr. Snyder's football team. That statement also added (again falsely) that the U.S. Federal Bureau of Investigations "possibly" may be involved.

Moreover, the false MEAWW articles have been referenced in at least 22 stories, which have generated over 160 million impressions. 13 of these stories have appeared on fabricated sites or accounts, highlighting the pernicious nature of content like that appearing on MEAWW.

Petitioner commenced the Indian Action on August 7, 2020, asserting claims for defamation *per se* arising out of the Defamatory Articles. Petitioner seeks damages of $10 million.

## V. DISCOVERY REQUESTED

Upon information and belief, Respondent owns, maintains and operates the MEAWW website and is in possession, custody and/or control of the servers upon which MEAWW is hosted. Indeed, according to MEAWW's Privacy Policy, MEAWW's services are hosted and operated in the United States – upon information and belief, under the control of Respondent. *See* Qureshi Decl., Ex. D at § 9. MEAWW further represents that the site's data "may be transferred to, stored, and processed in the United States." *Id*. Accordingly, Respondent possesses documents and information bearing directly upon the issues in the Indian Action and which Petitioner would be unable to obtain through discovery in the Indian Action.

As set forth in further detail in the subpoenas, Petitioner seeks discovery concerning (1) the identity of the third-parties involved in hiring Respondent to publish these false and defamatory articles and the creation, editing and approval of the Defamatory Articles; (2) the sources of information upon which the Defamatory Articles were based; (3) the revenues that were generated as a result of the "click-bait" Defamatory Articles; (4) any compensation the Indian Action Defendants and/or

- 7 -

Respondent received in exchange for publishing the Defamatory Articles, and from whom; (5) statistics concerning the number of site views and social media interactions that resulted from posting the Defamatory Articles; and (6) other documents and information that are relevant to the Indian Action and solely available through Respondent.

In addition to requests for the production of documents from Respondent, Petitioner seeks a deposition of Respondent concerning the subject matters described above and in the subpoenas.

## VI. PETITIONER IS ENTITLED TO THE DISCOVERY SOUGHT HEREBY

### A. Section 1782 Governs this Court's Authority to Order Discovery

28 U.S.C. § 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256-57 (2004).

Indeed, this Circuit has repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004). A district court should consider a Section 1782 request in the light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Id.*

### B. Petitioner Satisfies the Requirements under Section 1782

A district court has authority to grant an application for judicial assistance pursuant to Section 1782 if the following requirements are met: (1) the person from whom discovery is sought must reside and be found in the district of the district court; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing;" (3) the request must be made "by a foreign or international tribunal," or by "any interested person;" and (4) the evidence must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008). Each of these statutory prerequisites for this Court to order discovery in aid of the Indian Action is satisfied.

*First*, Respondent is a corporation maintains its principal place of business in Los Angeles, California, and, thus, can be found in this district. *See* Qureshi Decl., Ex. E.

*Second*, this request seeks the production of documents from and testimony by representatives of Respondent. Copies of the proposed document and deposition subpoenas to be served on Respondent are annexed to the Qureshi Decl. as Exhibits A and B.

*Third*, Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782. An interested person is one who has significant "participation rights" in the foreign action. *Intel*, 542 U.S. at 256-57. As the Supreme Court noted in *Intel*, "litigants are included among, and may be the most common example, of the 'interested person[s]' who may invoke § 1782." 542 U.S. at 256. Petitioner is the plaintiff in the Indian Action, and therefore is an "interested person" for the purposes of § 1782.

*Fourth*, the discovery sought is for use in the Indian Action, which is a "proceeding before a foreign or international tribunal" under the meaning of Section 1782. *Intel*, 542 U.S. at 258-59. As noted above, the Indian Action was commenced on August 7, 2020 and currently is pending before the Court of the Hon'ble High Court

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of Delhi. Petitioner therefore has sufficiently satisfied the requirement that the discovery be sought for use in a foreign proceeding.

Accordingly, Petitioner's request satisfies the statutory elements necessary to permit discovery pursuant 28 U.S.C. § 1782.

### C. The Court Should Exercise its Discretion to Grant Petitioner the Discovery He Seeks

Once the statutory requirements of 28 U.S.C. § 1782 are met, the district court is free to grant discovery in its discretion. *See AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*, 762 F. App'x 447, 449 (9th Cir. 2019). The Supreme Court has identified a number of factors for courts to consider when ruling on a § 1782 application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceeding, and the receptivity of the foreign court to federal-court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65; *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015). Here, all of these factors weigh in favor or granting the application.

*First*, where, as here, discovery is sought from a party that is not participating in the foreign proceeding, the need for court-ordered discovery is apparent. As the Supreme Court explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S at 264 (internal citations omitted). Respondent is not a party to the Indian Action and, upon information and belief, has no legal presence in India. Thus, the Indian Court has no jurisdiction to acquire the documents and testimony that Petitioner

seeks here and which are critical to Petitioner's ability to prove his claims in the Indian Action.

***Second*,** courts must look at the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance. Here, there is no evidence that the discovery sought in this application – basic documentation and business records maintained by Respondent in the ordinary course of business – would "offend" the Indian Court. To the contrary, the discovery sought would relate to the lack of truth in the Defamatory Articles and shed light on the authors' motivations in posting the Defamatory Articles, which are directly relevant to the Indian Action.

***Third***, this application is not an attempt to circumvent any foreign proof-gathering restrictions and does not violate any Indian restrictions on gathering evidence.[2] Petitioner has a good-faith basis for believing that he will be able to use these materials in the Indian Action. Petitioner has no reason to believe that the Indian Court would not be receptive to the judicial assistance requested, nor is Petitioner aware of any limitation on discovery imposed by the Indian Court, either generally or specifically, such that the request would "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. 241 at 264-65. The Court's grant of judicial assistance would permit Petitioner to appropriately prosecute its claim against Eleven, along with the authors of the Defamatory Articles and relevant principals and affiliates, in India given that Respondent is in exclusive possession of information central to Petitioner's claim.

***Fourth***, the document requests in the proposed subpoenas are neither unduly burdensome nor intrusive. Petitioner has tailored his requests to seek only those materials relevant to the Indian Action. Moreover, the documents sought necessarily

---

[2] As the Supreme Court noted in *Intel*, the Court's analysis of a Section 1782 application does not extend to the discoverability or admissibility of the information in the foreign forum. *See Intel*, 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there.").

*EX PARTE* PETITION FOR ASSISTANCE IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

would all be kept in the ordinary course of business and lend themselves to easy identification and production.

### VII.  **CONCLUSION**

For the reasons set forth herein, Petitioner respectfully requests that the Court issue an Order, pursuant to 28 U.S.C. § 1782, granting Petitioner leave to serve New Content with the subpoenas appended to the Qureshi Decl. as Exhibits A and B.

Dated: August 7, 2020   REED SMITH LLP

By: */s/ Carla Wirtschafter*
    Carla Wirtschafter
    James C. McCarroll
    Rizwan A. Qureshi
    *Attorneys for Petitioner*
    *Daniel Snyder*