Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Proposed Intervenor
Marc J. Randazza

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re:*<br><br>Application of Daniel Snyder for an Order Directing Discovery from New Content Media Inc. d/b/a MEA WorldWide Pursuant to 28 U.S.C. § 1782 | Misc. Action No.<br>2:20-mc-00076-MWF-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MARC J. RANDAZZA'S EMERGENCY MOTION TO INTERVENE AND STRIKE**<br><br>*The Honorable Michael R. Wilner* |

## 1.0    INTRODUCTION

Petitioner Daniel Snyder's attorneys are either grossly negligent or are knowingly trying to mislead this Court. They know full well that a lie gets halfway around the world before the truth gets its pants on.

Well, the truth now has its pants on.

California Rule of Prof. Conduct 3.3(d) requires attorneys in an *ex parte* proceeding to be forthcoming; Mr. Snyder's lawyers not only violated this rule but appear to have willingly and knowingly proffered false evidence to this Court. They

should be sanctioned, disciplined, and at least a portions of the petition (if not the entire petition) should be stricken from the record.

Mr. Snyder and his attorneys filed their Supplemental *Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 to Serve Additional Document Requests and Deposition Topics Identified in Exhibits T and U Hereto (Doc. No. 13) (the "Petition") with no regard to its factual accuracy. In fact, they were not only willfully blind to the facts, but they had to take great effort to avoid those facts. They most certainly must be aware of them, and in violation of their duties to this court under Rule 3.3(d) they decided to keep those facts to themselves – presuming that nobody would be watching and they would not get caught. Well, they're caught now.

The Petition contains numerous false statements about Proposed Intervenor Marc J. Randazza that, if not for the litigation privilege,[1] would subject them to liability for defamation. They uncritically repeat the baseless allegations of seemingly mentally ill people, who have stalked and committed extortion against Mr. Randazza and his family. Petitioner's counsel must have been aware of these facts, yet they present these items as though they were credible sources of information, as the sole basis for accusing Mr. Randazza of a conspiracy with individuals of whom he is barely aware and with entities of which he has never heard before.

There is no factual basis for the Petition's claims about Mr. Randazza, and the presentation of these claims was unethical. Mr. Randazza should be permitted to

---

[1] Mr. Randazza is not conceding the litigation privilege, which is a qualified privilege, applies.

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

1  intervene for the purpose of correcting the record and responding to Mr. Snyder's false

2  and defamatory statements.  Due to their scandalous and irrelevant nature, all references

3  in the Petition to Mr. Randazza should be stricken.  And the Court should sanction Mr.

4  Snyder and his counsel.[2]

5  **2.0    FACTUAL BACKGROUND**

6       The Petition lies.  Yes, that is a strong statement.  But, the misrepresentations in

7  it are so gross, so obvious, and so utterly beyond the pale that no reasonable person

8  could have possibly presented them with the hope that they would be supportable –

9  unless they were filed in an *ex parte* proceeding where there would be nobody to throw

10  a penalty flag.

11       The Petition asserts that Mr. Randazza "worked extensively with [Ari] Bass," that

12  he and Mr. Bass "have a well-documented history together, much of which has led to

13  this litigation," that he and Mr. Bass "launched a music production label named

14  Randazza Records, which was alleged to have 'breached copyright legislation and

15  stole … an audio track of a musical piece' from an individual named Alexandra Mayers,"

16  and that he and Mr. Bass "stalk[ed], intimidate[ed] and harass[ed]" Alexandra Mayers.

17  (Doc, No. 13 at 4-5.)  It also summarizes and quotes from court filings and blog articles

18  by a known extortionist, Crystal Cox, which accuse Mr. Randazza of "defamation,

19  harassment, and threats to an investigative blogger in the adult film industry" and claim

20  that Mr. Randazza is "'actively stalking, harassing, intimidating and threatening a fellow

21

22     [2]   By rights, the Petition should also be denied, but Mr. Randazza does not oppose
   Mr. Snyder continuing his fishing expedition – he will likely be no better at fishing than
23  he is at guiding an NFL franchise to any degree of success.

1   activist and anyone else who speaks out about the criminal activity and abuse running

2   rampant in Porn Valley.'" (*Id.* at 5.)

3        These statements are false and are detached from reality. Mr. Randazza has not

4   "worked extensively with Mr. Bass." (Declaration of Marc J. Randazza ["Randazza

5   Decl."] at ¶ 8.) He has met Mr. Bass a total of three times: once, briefly at an adult film

6   industry convention in Las Vegas, another time, briefly, at another such convention in

7   Los Angeles, and once, when he asked Mr. Randazza for comment on a hearing he was

8   observing in Las Vegas. (*Id.*; Declaration of Ari Bass ["Bass Decl."] at ¶¶ 3-5.) Mr.

9   Randazza declined to comment. (Randazza Decl. at ¶ 8; Bass Decl. at ¶ 5.) The only

10  other time Mr. Randazza made contact with Mr. Bass was in preparation for filing this

11  Motion. (Randazza Decl. at ¶ 9; Bass Decl. at ¶ 6.) Mr. Randazza has never worked

12  for Mr. Bass, and Mr. Bass has never worked for or with Mr. Randazza. (Randazza

13  Decl. at ¶ 10; Bass Decl. at ¶¶ 7-8.) They have never collaborated on anything together,

14  and never engaged in anything that a sane person could honestly characterize as

15  "conspiratorial actions" together. (Randazza Decl. at ¶¶ 10, 13.)

16       Mr. Randazza has never had any kind of involvement any enterprise known as

17  "Randazza Records." (*Id.* at ¶ 11.) Mr. Bass's tweet referencing this non-existent entity

18  was a joke to mock Ms. Mayers. (*Id.*; Bass Decl. at ¶ 10.) One would think that if Big

19  Firm attorneys and their private investigators turned up such a juicy tidbit of

20  information, that they would have some evidence other than a tweet to back it up.

21  Under Rule 3.3(d), at the very least, they would disclose to the court that they conducted

22  a search for this imaginary entity and they were unable to find any evidence for its

23  existence other than one satirical tweet. But, they didn't do that. This court should not

1   let them get away with that – if the court is entertaining an *ex parte* motion, it should be

2   presented with all information – including adverse information.

3         The only "sources" for Mr. Snyder's outrageous claims are Alexandra Mayers

4   and Crystal Cox.  Ms. Cox is an extortionist, a fact Mr. Randazza has written about

5   extensively, and anyone conducting a good-faith investigation of her claims would have

6   learned of this.  (Randazza Decl. at ¶¶ 17-21 and Exhibits A, B, & C.)

7         Petitioner's counsel has knowledge of the readily-accessible docket, rather than

8   stopping with Cox's complaint.  They should have educated themselves as to the

9   proceedings, as a complaint is not evidence.  Either they failed in their diligence or they

10  purposely withheld from this Court what actually happened.  Both explanations are

11  sanctionable.  To the extent the Court is skeptical, the Court should examine the

12  complaint – hundreds of pages of madness.  (Doc. No. 13-7.)  Then, the Court should

13  ask itself why they provided the Complaint, but not the Injunction entered against Cox.

14  (*See* Preliminary Injunction in *Randazza v. Cox*, No. 2:12-cv-02040, Dkt. No. 41 (D. Nev.

15  (Jan. 11, 2013), attached as **Exhibit 1**.)  The answer is clear – the same as in Jim Carrey's

16  **Liar Liar** – *because it would hurt their case.*

17        Cox initially attempted to extort Mr. Randazza to the tune of $5,000 per month,

18  and after he refused to pay her, she registered a domain name that corresponded to his

19  then-wife's name and posted insulting information on that website.  (Randazza Decl. at

20  ¶¶ 18-19.)  When that strategy did not work, Ms. Cox then registered a domain name

21  that corresponded to his then 3 year-old daughter's name.  (*Id.* at ¶ 20 and Exhibit B.)

22  Mr. Randazza sued Ms. Cox for defamation and cybersquatting, obtaining a preliminary

23  injunction against her and, ultimately, a monetary judgment of $452,740.59.  (*Id.* at ¶ 21

RANDAZZA | LEGAL GROUP

& Exhibit C; **Exhibit 1**; Default Judgment in *Randazza v. Cox*, No. BK-S-15-14956-abl, Dkt. No. 45 (Dec. 6, 2017) attached as **Exhibit 2**.)  *This* is who Mr. Snyder and his attorneys present to this Court as their source of information in an *ex parte* proceeding. Meanwhile, they present none of the contrary evidence that they most certainly had to move out of the way to find what they put in front of this Court.

The document by Ms. Mayers that Mr. Snyder cites in the Petition (Doc. No. 13-6) was filed in a defamation action brought by Mr. Randazza's then-wife, Jennifer Randazza, for Ms. Mayers's false and defamatory tweets accusing her of prostitution and involvement in organized crime.  Ms. Mayers was found liable for defamation and false light, with a judicial finding that she acted with knowledge her statements were false, and Ms. Mayers had a $166,600 judgment entered against her.  (*See* Notice of Entry of Judgment in *Randazza v. Mayers*, attached as **Exhibit 3**.)  The court also found that one of Ms. Mayers's statements leading up to the lawsuit likely constituted a criminal threat.  (*Id.*)  While Ms. Mayers did not attempt to extort Mr. Randazza, she was and is every bit as irrational and unreliable a source of information as Ms. Cox. (Randazza Decl. at ¶ 22.)  Accordingly, the Petitioner follows up its extortionist with an irrational, losing defamation defendant.

In reality, Mr. Randazza has never had any contact with New Content Media, Inc., or MEAWW, and had never even heard of the meaww.com website prior to Mr. Snyder sending a private investigator team of Jim Conklin and Anthony Ricevuto to his Las Vegas office to inquire about his non-existent relationships.  (Randazza Decl. at ¶¶ 23-27.)  Mr. Randazza told Mr. Conklin that he had no relationship with New Content or MEAWW.  (*Id.* at ¶¶ 23-24.)  Mr. Conklin refused to inform Mr. Randazza

1   on whose behalf he was acting (apparently, Mr. Snyder and his counsel).  (*Id.* at ¶ 24.)

2   Mr. Randazza admits that he then informed Mr. Conklin that he should tell his client

3   to "go fuck himself."  (*Id.*)  This is what is called giving the court adverse information.

4   Mr. Randazza checked for any possible relationship with MEAWW with his law partner,

5   Ronald D. Green, who confirmed that there was no relationship.  (Declaration of

6   Ronald D. Green ["Green Decl."] at ¶ 10.)

7        The only connection Mr. Randazza has with Mr. Snyder is that he once wrote a

8   mocking article about him.  (*See* Randazza Decl. at ¶ 28 and <u>Exhibit D</u>.)  It seems that

9   most of what Mr. Randazza had to say in that article about Snyder has withstood the

10  test of time.  Additionally, Mr. Randazza authored an amicus brief on behalf of the First

11  Amendment Lawyers Association in support of the "Washington Football Team," of

12  which Mr. Snyder is the majority owner.  (*See* Randazza Decl. at ¶ 29.)

13       If this were merely a case of an unknown *pro se* litigant making unfounded claims

14  about Mr. Randazza in litigation, any harm would be minimal.  However, Mr. Snyder is

15  a public figure represented by a large law firm with nearly unlimited resources and which

16  most certainly should have been more honest, forthcoming, and should have adhered

17  to Rule 3.3(d).  Because of this, they have given a megaphone to the screeds of

18  debunked conspiracy theorists, and, now, major media outlets, such as NBC News, are

19  reporting the baseless allegations in the Petition as true.  (*See* Randazza Decl. at ¶ 30;

20  Green Decl. at ¶¶ 11-12 and <u>Exhibit B</u>.)

21       It is impossible that Mr. Snyder and his attorneys made their allegations about

22  Mr. Randazza in good faith.  It is inconceivable that anyone spending more than five

23  minutes looking through the ramblings of Crystal Cox, particularly those in her myriad

frivolous lawsuits, could consider her a credible source of information.  For example,

Ms. Cox's complaint that Mr. Snyder cites is a 187-page incomprehensible screed that

names dozens of unrelated defendants, including Apple, a federal judge, the New York

Times, and the World Intellectual Property Organizations.  (Doc. No. 13-7; Green Decl.

at ¶ 18 & Exhibit C.)    The complaint asserts nonsensical legal theories, and no

competent attorney could possibly think the suit was meritorious.   (Green Decl. at

¶¶ 18-19).  Mr. Snyder's well-heeled attorneys were almost certainly aware of Ms. Cox's

numerous other frivolous and largely duplicative lawsuits, as well, filed in federal courts

all across the country, which were dismissed without briefing from any defendant.  (*Id.*

at ¶¶ 20-21.)

Further, Mr. Snyder's attorneys must have been aware that the suit in which Ms.

Mayers filed the cited brief resulted in a monetary judgment and injunction against Ms.

Mayers for her defamatory and threatening statements.  The brief they cite was not

connected to any motion and was filed a year and a half after the case was initiated,

meaning Mr. Snyder's counsel must have spent significant time looking through the

docket for references to Mr. Bass and Mr. Randazza.  Had they been honest, they would

have disclosed what actually happened in the Mayers lawsuit or, even better, never

would have written their obviously false and defamatory statements.

It is simply impossible that Snyder drilled so deeply as to find this complaint

and declaration, and some of the other frivolous details they use to try and make a

RANDAZZA | LEGAL GROUP

1    Crazy Wall[3] in support of their petition – and yet were unaware of the contrary

2    information that they had an ethical duty to disclose.  In fact, they would have had to

3    sift through mountains of evidence that these allegations were unfounded, to pick the

4    scraps they have used to try and get an *ex parte* order from this Court.

5            Why would they do that?  Who knows.  Presumably, Mr. Snyder, who is well

6    known for being thin-skinned, has fumed for years at Mr. Randazza's insults lobbed at

7    him in the article about his prior defamation case.  Or, perhaps Mr. Snyder is simply

8    desperate to concoct a story that will lend some credence to his bizarre theory that

9    everyone is out to get him.  Or maybe Mr. Snyder just wants his name out of the press

10   for the 40+ accusations of sexual misconduct against him.  (Will Hobson, *et al.*, "Lewd

11   cheerleader videos, sexist rules: Ex-employees decry Washington's NFL team

12   workplace," The Washington Post (Aug. 26, 2020), attached as **Exhibit 4**.)[4]  The only

13   thing we know for sure is that this Court should credit *nothing* that anyone who signed

14   this Petition brings to it in the future, without exacting scrutiny.

15   **3.0    LEGAL STANDARD**

16           Fed. R. Civ. P. 24 permits an individual to intervene.  Rule 24(a)(2) provides that

17   an individual may intervene as a matter of right if he can demonstrate that "(1) it has a

18   significant protectable interest relating to the property or transaction that is the subject

19   of the action; (2) the disposition of the action may, as a practical matter, impair or

20   _____

21   [3] (*See* Bass Decl. at ¶ 6 – a "Crazy Wall" is best exhibited by a scene in the television
     show It's Always Sunny in Philadelphia.  Mr. Bass provides a still shot from the show
     in his declaration.)

22   [4]    Available at: https://www.washingtonpost.com/sports/2020/08/26/redskins-
     cheerleaders-video-daniel-snyder-washington/?arc404=true (Last accessed Sept. 3,
23   2020).

1   impede the applicant's ability to protect its interest; (3) the application is timely; and (4)

2   the existing parties may not adequately represent the applicant's interest." *United States*

3   *v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002).  In deciding whether intervention

4   is proper, "courts are guided primarily by practical and equitable considerations, and

5   the requirements for intervention are broadly interpreted in favor of intervention."

6   *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

7          An individual may also intervene with permission of the court by showing, "[o]n

8   timely motion," that he "has a claim or defense that shares with the main action a

9   common question of law or fact."  (Fed. R. Civ. P. 24(b)(2).)

10  **4.0    ARGUMENT**

11      **4.1    Mr. Randazza May Properly Intervene**

12          Mr. Randazza seeks to intervene in this matter for the purpose of correcting

13  several severe misrepresentations Mr. Snyder and his counsel have made to this Court,

14  protecting his reputation that has been smeared by these unethical attorneys, and

15  policing the complete disregard for Rule 3.3(d).  Mr. Snyder repeats several unfounded

16  allegations from unreliable individuals and represents to the Court that these baseless

17  allegations have merit, using them as the basis for claiming that discovery related to

18  communications with Mr. Randazza is warranted.

19          Mr. Randazza has a protectable interest in this case.  As a member of the

20  California Bar and the Bar of this Court, Mr. Randazza has a protectable interest in

21  ensuring the court system isn't being abused for the purpose of spreading false rumors

22  that are then used to justify a baseless fishing expedition.  Intervention is especially

23

RANDAZZA | LEGAL GROUP

important in this *ex parte* proceeding, where there are no defendants who are willing or able to refute Mr. Snyder's numerous falsehoods.

Finally, Mr. Randazza has a protectable interest in safeguarding his personal and professional reputation. While Petitioner might potentially be immune from defamation liability due to his abuse of the litigation privilege, he has still defamed Mr. Randazza, and Mr. Randazza has a right to defend himself from Mr. Snyder's baseless allegations. In fact, the reason Mr. Randazza requests that this Motion be heard on an emergency basis is that he has already suffered tangible reputational harm the instant media outlets wrote about the Petition, which happened immediately after it was filed. (Randazza Decl. at ¶ 30; Green Decl. at ¶¶ 11-12 and Exhibit B.) It is inconceivable that media outlets like NBC Sports immediately knew of the Petition's filing without advance notice from Mr. Snyder or his agents, and it is likely Mr. Snyder will continue to provide advance notice of his defamatory filings if he is allowed to continue.

If the Court does not believe Mr. Randazza may intervene as of right, it should permit him to do so, nonetheless. His arguments share common questions of law and fact as any argument that may later be raised by the Respondent or the litigants in India. Objections to the putative subpoena or a motion to quash would likely address Petitioner's lack of foundation and abuse of the judicial system. But, waiting for them to appear will be too late to stem the immediate injury arising from the filing of the improper Petition.

### 4.2    The Petition Was Filed in Violation of Cal. Rule Prof. Cond. 3.3(d)

The California Bar has recognized the heightened importance of candor towards the tribunal in such proceedings, which is why it promulgated California Rule of

Professional Conduct 3.3(d). This Rule provides that "[i]n an ex parte proceeding where notice to the opposing party in the proceeding is not required or given and the opposing party is not present, **a lawyer shall inform the tribunal of all material facts known to the lawyer** that will enable the tribunal to make an informed decision, **whether or not the facts are adverse to the position of the client.**" Cal. R. Prof. Conduct 3.3(d) (emphasis added). Mr. Randazza has an ethical responsibility to inform the Court of violations of ethics rules.

Mr. Snyder's lawyers did not inform this Court, the tribunal, of all material facts known to them. They did not disclose that the documents they purport to rely on were in proceedings where the proponents of those documents could not establish their claims. They must have investigated the provenance of those documents and they withheld from the Court that the speakers were unreliable. These facts are adverse to the position of Mr. Snyder, but his counsel failed in their duty to disclose. Without intervention, the Court would have no one to correct the record and identify the glaring omission of facts adverse to Mr. Snyder that he and his counsel committed, in violation of Rule 3.3(d).

### 4.3    The Petition Should be Stricken, or at Least References to Randazza Should be Stricken.

In this miscellaneous matter, Mr. Snyder's supplemental Petition is functionally equivalent to an amended complaint, making it a "pleading" for purposes of Fed. R. Civ. P. 12(f). This rule allows the Court, at its discretion, to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Striking material from a pleading is appropriate "if it is clear that the matter to be stricken could have no

possible bearing on the subject matter of the litigation." *Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005). Striking materially is typically appropriate where "prejudice would result to the movant from the denial of the motion." *Wailua Associates v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 555 (D. Haw. 1998).

As explained in *Section 2.0*, above, Mr. Randazza has no relationship with MEAWW or New Content Media. He has had only the most transitory of relationships with Ari Bass, and Mr. Randazza has engaged in none of the activity alleged in the Petition. Mr. Snyder and his attorneys repeated the accusations of Alexandra Mayers and Crystal Cox, who have a vendetta against Mr. Randazza and engaged in years-long campaigns of defamation and harassment of both Mr. Randazza and his family. They did so with the knowledge that the accusations were false – but they must have figured that this was an *ex parte* hearing, and they would be unaccountable for it. Shame on them. They got caught. They should be held responsible now that they got caught.

It is shameful that licensed attorneys would repeat the ramblings of Cox and Mayers and present them as credible to any court. Baselessly accusing Mr. Randazza, an intellectual property attorney, of copyright infringement, stalking, harassment, and intimidation, is precisely the kind of "immaterial, impertinent, or scandalous" matter that Rule 12(f) is meant to address. The entirety of Doc. No. 13 page 4, line 23 to page 5, line 19 should be stricken, along with any other references to Mr. Randazza.

## 5.0 CONCLUSION

For the foregoing reasons, the Court should allow Mr. Randazza to appear as an intervenor in this miscellaneous matter and should strike the Petition in its entirety, or at least portions of the Petition that contain any reference to Mr. Randazza. Mr. Snyder

and his attorneys should further be sanctioned with monetary sanctions,[5] and the attorneys admitted *pro hac vice* should have their admission revoked.

Dated: September 3, 2020.          Respectfully submitted,

                                   RANDAZZA LEGAL GROUP, PLLC

                                   /s/ Alex J. Shepard
                                   Alex J. Shepard, CA Bar No. 295058
                                   2764 Lake Sahara Drive, Suite 109
                                   Las Vegas, NV 89117

                                   Attorneys for Proposed Intervenor
                                   Marc J. Randazza

---

[5]   Mr. Randazza does not want any of the sanctions money.  But, it should be sufficiently large of a sanction to send a message to these lawyers and others that their conduct is intolerable.  Where the Court decides to direct the sanctions is of no real interest to Mr. Randazza.  However, if the Court is interested in a suggestion, Mr. Randazza suggests that the sanction be paid to the California Bar's Lawyers Assistance Program.

Case No. 2:20-mc-00076-MWF-MRW

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I further certify that a true and correct copy of the foregoing document is being served via transmission of Notice of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Alex J. Shepard
Alex J. Shepard