# **EXHIBIT 1**

Preliminary Injunction

*Randazza v. Cox*

No. 2:12-cv-02040
Dkt. No. 41
(D. Nev. Jan. 11, 2013)

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARC J. RANDAZZA, an individual, JENNIFER RANDAZZA, an individual, and NATALIA RANDAZZA, a minor, <br><br> Plaintiffs, <br><br> vs. <br><br> CRYSTAL COX, an individual, and ELIOT BERNSTEIN, an individual, <br><br> Defendants. | Case No. 2:12-cv-02040-GMN-PAL <br><br> **ORDER** |

Pending before the Court is the Motion for Preliminary Injunction (ECF #2) filed by Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza (collectively, "Plaintiffs"). Also before the Court are Defendant Cox's Motion for Judges and Clerks to Sign a Conflict of Interest Disclosure (ECF # 19), Defendant Cox's Motion for Judge Gloria Navarro's Recusal (ECF #20), and Plaintiffs' Motion to Strike Defendant Cox's Fugitive Surreply to Motion for Preliminary Injunction (ECF #31).

**I. BACKGROUND**

The Complaint brought before the Court involves Plaintiffs' claims that Defendants registered no less than thirty-two Internet domain names ("Domain Names") that incorporate all or part of Plaintiffs' personal names. Plaintiff Marc Randazza is the managing partner of Marc J. Randazza PA, d/b/a Randazza Legal Group, (*See Id.* at Ex. 4) and also provides legal commentary for various media organizations (*See Id.* at Ex. 3, 5; Randazza Decl. ¶ 5). Plaintiff Jennifer Randazza is Plaintiff Marc Randazza's wife, and Natalia Randazza is their four-year-old daughter. Defendant Crystal Cox ("Cox"), registered the Domain Names at issue in this case, some of which were listed under proxy, Defendant Eliot Bernstein ("Bernstein") (collectively, "Defendants"). Defendants allegedly registered the Domain Names at issue in this case through registrar

1

Godaddy.com and through Google's Blogspot service between December 10, 2011 and September 20, 2012:

1. <marcrandazza.com>
2. <marcrandazza.me>
3. <marcjrandazza.com>
4. <fuckmarcrandazza.com>
5. <marcjohnrandazza.com>
6. <marcrandazzasucks.com>
7. <marcrandazzaisalyingasshole.com>
8. <marcrandazza.biz>
9. <marcrandazza.info>
10. <marcrandazza.mobi>
11. <marcrandazzaparody.com>
12. <exposemarcrandazza.com>
13. <randazzalegalgroupsucks.com>
14. <trollmarcrandazza.com>
15. <hypocritemarcrandazza.com>
16. <crystalcoxmarcrandazza.com>
17. <marcjohnrandazza.blogspot.com>
18. <randazzalegalgroup.blogspot.com>
19. <marcrandazzaviolatedmylegalrights.blogspot.com>
20. <markrandazza.blogspot.com>
21. <marcrandazza.blogspot.com>
22. <jenniferrandazza.blogspot.com>
23. <marcrandazzafreespeech.blogspot.com>
24. <marcrandazzaegomaniac.blogspot.com>
25. <marcjrandazza-lawyer.blogspot.com>
26. <marc-randazza.blogspot.com>
27. <marcrandazzawomensrights.blogspot.com>
28. <marcrandazza-asshole.blogspot.com>
29. <marcrandazzatips.blogspot.com>
30. <marcrandazzaabovethelaw.blogspot.com>
31. <marcrandazzaliedaboutcrystalcox.blogspot.com>
32. <janellerandazza.blogspot.com>;

On January 16, 2012, Cox sent an email to Plaintiff Marc Randazza stating that she had purchased his personal name as a domain name. (*See Id.* at Ex. 8). She then offered Plaintiff her "reputation management services" and asked if he or anyone else would be interested in purchasing

these services. (*Id.*). At the time of the filing of the Complaint, Cox used the websites for her "investigative blogging" or as GoDaddy "domain park" pages, which display a variety of pay-per-click advertisements. (*Id.* at Ex. 11.) Randazza responded to Cox that she had "no right to register a domain name that corresponds to" his real name. (*Id.*) Randazza also requested that Cox transfer the rights to <marcrandazza.com> to Randazza. (*Id.*) Cox did not transfer the Domain Names, and, ultimately, she advertised on her blog that the Domain Name <marcrandazza.me> was for sale for $5 million. (*See id.* at Ex. 13.)

After Defendants refused to transfer the Domain Names and to cease their infringing activity, Plaintiffs filed a complaint in this Court alleging six causes of action: (1) Violation of Individual Cyberpiracy Protections under 15 U.S.C. § 8131; (2) Cybersquatting under 15 U.S.C. § 1125(d); (3) Right of Publicity under Nevada Revised Statute 597.810; (4) Common Law Right of Publicity; (5) Common Law Right of Intrusion Upon Seclusion; and (6) Civil Conspiracy. Plaintiffs also filed the instant motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction barring Defendants from using the Domain Names. For the reasons discussed below, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) is GRANTED.

## II. LEGAL STANDARD REGARDING PRELIMINARY INJUNCTIONS

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). A party seeking injunctive relief under Fed. R. Civ. P. 65 must demonstrate irreparable harm, meaning that "money damages alone will not suffice to restore the moving party to its rightful position." *Clark*

*Pacific v. Krump Constr., Inc.*, 942 F.Supp. 1324, 1346 (D. Nev. 1996). A court may issue a preliminary injunction where the plaintiff shows "serious questions going to the merits," and a "balance of hardships that tips sharply toward the issuance of a preliminary injunction," so long as the plaintiff can also show irreparable harm if the court does not issue the injunction. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011).

In order to obtain a preliminary injunction, a plaintiff must show that: (1) the suffering of irreparable harm if injunctive relief is not granted; (2) success on the merits; (3) the balance of equities tips in favor of the moving party; and (4) granting the injunction is in the public interest. *See Stanley v. University of Southern California*, 13 F.3d 1313, 1319 (9th Cir. 1994). Alternatively, the party seeking an injunction must also show that 1) the party is likely to suffer irreparable harm absent the issuance of an injunction and 2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor. *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). A "serious question" is one for which the moving party has a "fair chance" of success on the merits. *See Stanley*, 13 F.3d at 1319.

"Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The purpose of a prelimary injunction is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

**III. DISCUSSION**

For the reasons discussed below, the Court concludes that Plaintiffs have established each of the four elements necessary for the preliminary injunction to issue. Accordingly, the Court finds

that Plaintiffs are entitled to a preliminary injunction directing the domain name registrar to transfer the Domain Names to Plaintiffs.

**A. Likelihood of Success on the Merits**

The *Winter* test states that in order to show the necessity of injunctive relief, plaintiffs must first prove a likelihood of success on the merits. 555 U.S. at 20. While Plaintiffs have alleged six causes of action against Defendants, (ECF No. 1), because Plaintiffs have met their burden for Violation of Individual Cyberpiracy Protections claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 8131, the Court need not address whether Plaintiffs are likely to succeed on the merits of the remaining claims.

Plaintiffs' first cause of action alleges that Defendants' registration of the Domain Names violates the provision of the ACPA that provides cyberpiracy protection for individuals. *See* 15 U.S.C. § 8131. In pertinent part, section 8131 provides that:

> [a]ny person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

15 U.S.C. § 8131(1)(A). The statute further provides a very limited exception that requires, *inter alia*, that the person registering the domain name act in good faith:

> A person who in good faith registers a domain name consisting of the name of another living person, or a name substantially and confusingly similar thereto, shall not be liable under this paragraph if such name is used in, affiliated with, or related to a work of authorship protected under Title 17, including a work made for hire as defined in section 101 of Title 17, and if the person registering the domain name is the copyright owner or licensee of the work, the person intends to sell the domain name in conjunction with the lawful exploitation of the work, and such registration is not prohibited by a contract between the registrant and the named person. The exception under this subparagraph shall apply only to a civil action brought under paragraph (1) and shall in no manner limit the protections afforded under the Trademark Act of 1946 (15 U.S.C. 1051 et seq.) or other provision of Federal or State law.

15 U.S.C. § 8131(1)(B).

Finally, the statute empowers the court to "award injunctive relief, including the forfeiture or cancellation of the domain name or the transfer of the domain name to the plaintiff." 15 U.S.C. § 8131(2).

Thus, Defendants are liable under the ACPA if they had a bad faith intent to profit from registering, trafficking in, or using as a domain name a mark that is either identical or confusingly similar to a distinctive mark, such as Plaintiff's personal name. For the reasons discussed below, the Court concludes that Plaintiffs have shown that they will likely succeed in establishing each of the three elements of the personal cyberpiracy protection claim and also that Defendants will be unlikely to establish the good faith exception. Thus, Plaintiffs have shown the requisite likelihood of success on the merits.

*1. Defendants registered numerous domain names that include one of more of Plaintiffs' personal names.*

Plaintiffs provided WhoIs records for each of the Domain Names, each of which lists either Defendant Cox or Defendant Bernstein as the registrant. (*See* Pls.' Mot. for TRO, Ex. 7, ECF No. 2-9.) The Domain Names consist of the entirety or part of Plaintiffs' personal names. (*Id.*) Neither Defendant has ever been known by the name Randazza. Thus, Plaintiffs have established that Defendants have "register[ed] a domain name that consists of the name of another living person . . . .." *See* 15 U.S.C. § 8131(1)(A).

*2. Defendants likely registered the Domain Names without Plaintiffs' consent.*

Plaintiffs have produced a great deal of evidence that they did not consent to Defendants' registration of the Domain Names and have a high likelihood of success in proving this element at trial. First, Defendants use the websites to publish highly unflattering information about Plaintiffs' business and personal lives. (*See* Pls.' Mot. for TRO, Exs. 11-15.) Correspondence between Plaintiffs and Defendants reflects that Plaintiffs were unaware that Defendants would register the Domain Names prior to Defendants making Plaintiffs aware of that fact and did not give their

consent. (*See* Pls.' Mot. for TRO, Exs. 8, 10.) Accordingly, this Court finds that Plaintiffs have established a likelihood of success that Defendants registered the Domain Names without their consent.

> *3. Defendants likely had the specific intent to profit from Plaintiffs' names by selling the domain name for financial gain.*

Few courts have attempted to interpret § 8131. The Ninth Circuit similarly has not interpreted the statute, however, this Court finds that Plaintiffs are likely to succeed on the final element. In deciding whether a plaintiff showed success on the merits of a § 8131 claim in U.S. District for the Southern District of New York, the court considered the same factors as a § 1125 claim because the statutes were "so strikingly similar." *Bogoni v. Gomez*, 847 F. Supp. 2d 519, 524 (S.D.N.Y. 2012). In *Bogoni*, the defendant purchased the domains and attempted to sell them for a "price exorbitantly beyond the Domain Names' actual value." *Id.* at 525. The court held that this was enough to show that the defendant had purchased the domains with the specific intent to profit from their registration. *Id.*

Here, Defendants' actions leading up to the filing of the Complaint, as well as Defendants' past behavior, as represented in Plaintiffs' reply briefing, clearly seems to indicate cyber-extortion. (*See* Pls.' Reply in Support of Preliminary Injunction, ECF No. 28, Ex. 1). Specifically, Defendant Cox's request for $5 million in exchange for <marcrandazza.me> and her offering of "reputation management services" indicate her intent to profit from the registration of Plaintiffs' personal names as Domain Names. Defendant's post hoc attempt to explain this as a "joke" is not credible. Given the fact that the Defendant has been shown to have engaged in a pattern of cybersquatting and cyber-extortion, this Court finds that she was more likely than not, attempting to sell this domain name to the plaintiff, or to solicit a price for the domain name in excess of her out of pocket expenses related to the domain name.

Thus, for these reasons, the Court finds that Plaintiffs are likely to succeed in establishing that Defendants had the intent to profit from the registration of the Domain Names.

### B. Plaintiffs will suffer irreparable harm if the preliminary injunction does not issue.

Courts generally presume irreparable injury once a plaintiff in a trademark action has established that it is likely to succeed on the merits. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007); *see also Verizon Cal. Inc. v. Navigation Catalyst Sys, Inc.*, 568 F. Supp. 2d 1088, 1094 (N.D. Cal. 2008) (recognizing that this presumption applies in causes of action under the ACPA). Because the Court finds a high likelihood that Plaintiffs will succeed on the merits, the Court also finds that Plaintiffs have carried their burden in establishing that they will likely suffer irreparable harm in the absence of temporary relief.

### C. The balance of hardships balance in Plaintiffs' favor.

As discussed above, Plaintiffs have demonstrated irreparable injury and are thus also entitled to an injunction upon a showing that there are serious questions as to the merits of Plaintiffs' claims and that the hardships weigh in Plaintiffs' favor. *See A&M Records, Inc. v. Napster, Inc.* 239 F.3d 1004, 1013 (9th Cir. 2001) (citation omitted). The hardships balance strongly in favor of Plaintiff. Although the issuance of a TRO will require Defendants to cease using Plaintiffs' personal names, Defendants will remain free to register additional domain names that do not incorporate Plaintiffs' names. In fact, Defendants already have 1,200 other domain names that do not include Plaintiffs' names through which Defedant can continue to publish her opinions. Additionally, many of the Domain Names currently serve as Domain "park pages" that contain only a variety of pay-per-click advertisements. (*See, e.g.*, Pls.' Mot. for TRO, Ex.11 at 18, ECF No. 2-13.)

In contrast, if the injunction is not issued, Defendants will be capable of following through with their stated intentions to continue to register "hundreds" of domain names using Plaintiff Randazza's name "eternally." (*See Id*., Ex. 14 at 3).

Finally, issuance of the injunction will maintain the status quo. "[T]he status quo is the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963), *cert. denied* 375 U.S. 821 (1963). An injunction would return the parties to the position that existed before Defendants began using Plaintiffs' personal names in association with their websites, before the extortion and witness intimidation began. By returning the allegedly infringing domain names to Plaintiffs, and allowing Plaintiffs to control the Domain Names during the pendency of this litigation, this injunctive relief will return the parties to the respective positions that they held before Defendants began using the Domain Names. For these reasons, the Court finds that the balance of equities tips in favor of Plaintiffs.

**D. The issuance of a preliminary injunction benefits the public's interest.**

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted).

Although Defendant Cox argues that her free speech rights will be infringed if the Court issues this preliminary injunction (*See* Defendant Cox's Obj. to Injunctive Relief ECF No. 29 at 3), the injunction clearly does not implicate Defendant's First Amendment rights. The injunction does not prevent Defendants from publishing opinions on other blogs, but instead precludes her only from registering or using domain names that consist of Plaintiffs' full names. Therefore, the Court finds that no public interest will be injured by the issuance of injunctive relief.

**E. The six domain names WIPO awarded to Plaintiffs are not subject to the terms of the Preliminary Injunction.**

On November 30, 2012, after the filing of the instant case, the World Intellectual Property Organization ("WIPO") issued a decision granting the transfer of the following domain names to Plaintiff Marc Randazza:

  a. <marcjohnrandazza.com>
  b. <marcjrandazza.com>
  c. <marcrandazza.com>
  d. <marcrandazza.biz>
  e. <marcrandazza.mobi>
  f. <marcrandazza.info>

Because WIPO transferred the six domain names to Plaintiffs, these domains no longer need to be locked by the registrar, nor is injunctive relief required with respect to these domain names. It is this Court's order that these domains should be transferred to Plaintiff's ownership consistent with the results of the WIPO decision without further delay or obstruction by the Defendants or the domain name registrar, GoDaddy.

**F. Defendant Cox's Motion for Judges and Clerks to Sign a Conflict of Interest Disclosure (ECF No. 19) is DENIED.**

Defendant Cox requested that the judges and clerks sign a conflict of interest disclosure. However, this has already been satisfied by the preliminary procedures of this Court. This Court complies with the Judicial Code of Conduct, which requires that judges perform their duties fairly and with impartiality. (Code of Conduct, Canon 3). Furthermore, Plaintiffs have submitted a Certificate of Interested Parties (ECF No. 7). The judge and clerks have no conflict of interest, and no legal authority supports the signing of such a disclosure. Therefore, the motion is denied.

**G. Defendant Cox's Motion Requesting the Recusal of Judge Navarro (ECF No. 20) is DENIED.**

Similar to the Motion for Judges and Clerks to Sign a Conflict of Interest Disclosure, the Court finds no legal basis requiring that Judge Navarro recuse herself.

Any claim of of alleged bias and prejudice on the part of the judge must "stem from an extrajudicial source" and must result in an "opinion on the merits" based on something other than what the judge has garnered from the pleadings and motions in the case. *U.S. v. Grinnel Corp.*, 384 U.S. 563, 583 (1966); *see also Liteky v. U.S.*, 510 U.S. 540 (1994), (discussing the "extrajudicial source" doctrine with regard to the disqualification of a federal district court judge). Allegations of bias warranting recusal of a judge must contain specific facts to support this position. *U.S. v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997). "[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* at 1454, quoting *Liteky*, 510 U.S. at 554-56.

Furthermore, counsel cannot, for reason of disqualification, name a judge in a counterclaim with the purpose of disqualifying her from the suit. While a judge cannot act in his own case, neither may counsel file "specious pleadings" solely for the purpose of disqualifying him. *Ely Valley Mines, Inc. v. Lee*, 385 F.2d 188, 191 (9th Cir. 1967).

Cox has failed to note any specific instances where Judge Navarro has shown any bias or prejudice. No conflict of interest has been alleged by Defendants, and none exists. Furthermore, Cox may not name Judge Navarro in a suit for the purposes of disqualifying her from acting in a case. In her Counterclaim (ECF No. 24), Cox makes no specific allegations of impropriety, but seems only to be naming the Judge as a counterdefendant in order to create a reason for her recusal. Therefore, the motion for recusal is denied.

**H. Plaintiffs' Motion to Strike Defendant Crystal Cox's Fugitive Surreply to Motion for Preliminary Injunction Pursuant to LR 7-2 (ECF No. 31) is DENIED.**

Although Defendant Cox's filing (ECF Nos. 29, 30) was untimely, and would otherwise be stricken, the Court CM/ECF system experienced several outages during the time of Cox's filing. Therefore, the Court considered all of Cox's filings in relation to the Motion for Preliminary Injunction. Plaintiffs' Motion to Strike Defendant Crystal Cox's Fugitive Surreply to Motion for Preliminary Injunction is denied.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction (ECF No. 2) filed by Plaintiffs Marc J. Randazza, Jennifer Randazza, and Natalia Randazza is **GRANTED.** Defendants, including without limitation, all of their respective partners, officers, agents, servants, employees, and all other persons acting in concert or participation with Defendants, are temporarily enjoined and restrained from (A) registering or trafficking in any domain name containing any of Plaintiffs' names or any confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs; (B) operating or maintaining any website that includes any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any letters, words, phrases or designs; and (C) using any of Plaintiffs' names, or any confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs in commerce. Defendants shall immediately cease and desist any and all use of Plaintiffs' names and any and all variants thereof, including use of the Domain Names, and take all necessary actions to transfer the Domain Names to Plaintiffs.

**IT IS FURTHER ORDERED** that, pursuant to the arbitration decision by the World Intellectual Property Organization, the domain names <marcjrandazza.com>, <marcjohnrandazza.com>, <marcrandazza.com>, <marcrandazza.mobi>, <marcrandazza.info>, and <marcrandazza.biz> shall be released to Plaintiff Marc Randazza's full control by the Registrar of those domain names.

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 8131(2), the domain names <marcrandazza.me>, <fuckmarcrandazza.com>, <marcrandazzasucks.com>, <marcrandazzaisalyingasshole.com>, <marcrandazza.biz>, <marcrandazzaparody.com>, <exposemarcrandazza.com>, <randazzalegalgroupsucks.com>, <trollmarcrandazza.com>, <hypocritemarcrandazza.com>, <crystalcoxmarcrandazza.com>,

<marcjohnrandazza.blogspot.com>, <randazzalegalgroup.blogspot.com>, <marcrandazzaviolatedmylegalrights.blogspot.com>, <markrandazza.blogspot.com>, <marcrandazza.blogspot.com>, <jenniferrandazza.blogspot.com>, <marcrandazzafreespeech.blogspot.com>, <marcrandazzaegomaniac.blogspot.com>, <marcjrandazza-lawyer.blogspot.com>, <marc-randazza.blogspot.com>, <marcrandazzawomensrights.blogspot.com>, <marcrandazza-asshole.blogspot.com>, <marcrandazzatips.blogspot.com>, <marcrandazzaabovethelaw.blogspot.com>, <marcrandazzaliedaboutcrystalcox.blogspot.com>, and <janellerandazza.blogspot.com> shall be immediately locked by the Registrar and/or its successor registrars and transferred to Plaintiffs.

**IT IS FURTHER ORDERED** that Plaintiffs shall receive a $600 refund from the Court for the six domain names that were transferred pursuant to the WIPO arbitration decision. The Court shall keep the nominal bond of one hundred dollars ($100) for each of the other twenty-six domain names at issue because the evidence indicates that Defendant will suffer only minimal, if any, damage by the issuance of this preliminary injunction.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judges and Clerks to Sign a Conflict of Interest Disclosure is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judge Gloria Navarro to Recuse Herself is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Defendant Crystal Cox's Fugitive Surreply to Motion for Preliminary Injunction is DENIED.

**IT IS SO ORDERED** this 11th day of January, 2013.

_____
Gloria M. Navarro
United States District Judge